IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-120

 No. 471A20

 Filed 29 October 2021

 IN THE MATTER OF: O.E.M.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order terminating

 respondent-father’s parental rights entered on 21 August 2020 by Judge Kimberly

 Gasperson-Justice in District Court, Transylvania County. Heard in the Supreme

 Court on 30 August 2021.

 No brief filed for petitioner-appellee Transylvania County Department of Social
 Services.

 Womble Bond Dickinson (US) LLP, by Rebecca C. Fleishman and Beth Tyner
 Jones, for appellee Guardian ad Litem.

 Richard Croutharmel for respondent-appellant father.

 Earls, Justice.

¶1 In this case, we decide whether the trial court had jurisdiction to enter an order

 terminating respondent-father’s parental rights in his child, O.E.M. (Oscar).1 The

 party seeking termination, the Transylvania County Department of Social Services

 (DSS), failed to verify its motion in the cause for termination as required under

 N.C.G.S. § 7B-1104 (2019). Nevertheless, after conducting a hearing, the trial court

 1 Oscar is a pseudonym which is used for ease of reading and to protect the identity of

 the juvenile.
 IN RE O.E.M.

 2021-NCSC-120

 Opinion of the Court

 terminated respondent-father’s parental rights.

¶2 The precise question before us is whether DSS’ failure to verify its motion

 deprived the trial court of subject matter jurisdiction to conduct termination

 proceedings. In In re T.R.P., this Court held that a party’s failure to verify a petition

 alleging that a juvenile was neglected was a fatal jurisdictional defect. 360 N.C. 588,

 588 (2006). Although In re T.R.P. addressed a party’s failure to verify a juvenile

 petition, we hold today that the requirement contained in subsection 7B-1104 is also

 jurisdictional as applied to a motion in the cause for termination. Accordingly, we

 conclude that DSS’ failure to verify its motion in the cause deprived the trial court of

 subject matter jurisdiction, and we vacate the order terminating respondent-father’s

 parental rights in Oscar.

 I. Analysis

¶3 DSS filed a properly verified juvenile petition alleging that Oscar was a

 neglected and dependent juvenile on 27 November 2018. The petition alleged that

 Oscar’s mother2 lacked “knowledge of normal child development” and had exhibited

 “delusional” behavior at the hospital after giving birth, and that respondent-father

 lacked “essential items for the juvenile” in his residence and had a pending criminal

 charge for assault on a female. Both parents admitted to frequent marijuana usage.

 2 Oscar’s mother, who was ultimately deemed incompetent and provided with an
 appointed guardian ad litem to represent her at the termination hearing, did not appeal the
 order terminating her parental rights.
 IN RE O.E.M.

 2021-NCSC-120

 Opinion of the Court

 The trial court entered an order granting DSS nonsecure custody of Oscar and, after

 a hearing, an order adjudicating Oscar to be a dependent and neglected juvenile. Both

 parents entered into case plans with DSS. Respondent-father complied with some

 elements of his case plan and did participate in occasional visits with Oscar, but he

 continued to use marijuana and engaged in further acts of domestic violence.

¶4 On 25 March 2020, DSS filed a motion in the cause seeking termination of both

 parents’ parental rights on the grounds of neglect pursuant to N.C.G.S. § 7B-

 1111(a)(1), willful failure to make reasonable progress in correcting the conditions

 leading to Oscar’s removal pursuant to N.C.G.S. § 7B-1111(a)(2), and incapability

 pursuant to N.C.G.S. § 7B-1111(a)(6). DSS failed to verify this motion.3 On 3 June

 2020, the trial court conducted a termination hearing. On 21 June 2020, the trial

 court entered an order concluding that DSS had proven all three grounds and

 terminating both parents’ rights in Oscar.

¶5 On appeal, respondent-father does not challenge the findings of fact or

 conclusions of law contained in the termination order. Rather, the sole basis for

 3 We acknowledge that the motion was filed at the start of the COVID-19 pandemic

 and shortly after emergency orders establishing modified court procedures were entered. See
 e.g., Order of the Chief Justice Emergency Directives 1 to 2 (13 March 2020),
 https://www.nccourts.gov/covid-19 (encouraging judges to grant additional accommodations
 to parties, witnesses, attorneys, and others with business before the courts who are at a high
 risk of severe illness from COVID-19.”); see also Order of the Chief Justice Extending Court
 System Deadlines (19 March 2020), https://www.nccourts.gov/covid-19. However, there is
 nothing in the record to suggest that DSS’ failure to verify its motion in the cause was in any
 way related to difficulties caused by the pandemic or any related accommodations, and
 counsel has made no argument or representation to that effect before this Court.
 IN RE O.E.M.

 2021-NCSC-120

 Opinion of the Court

 respondent-father’s appeal is DSS’ failure to verify its motion for termination. It is

 undisputed that DSS did not verify its motion as required under N.C.G.S. § 7B-1104.

 The parties disagree as to what consequences arise from this omission. Because the

 parties’ dispute centers on their competing interpretations of our holding in In re

 T.R.P., we begin with a brief examination of our decision in that case.

 A. In In re T.R.P., this Court established that a statutory mandate to verify
 a juvenile petition before filing creates a jurisdictional requirement.

¶6 To initiate the process for terminating a parent’s parental rights in a juvenile,

 the party seeking termination must file a petition or may, if the child is already the

 subject of a pending abuse, neglect, or dependency proceeding, file a motion in the

 cause for termination. N.C.G.S. § 7B-1104 (2019). Subsection 7B-1104 provides that

 “[t]he petition [for termination], or motion pursuant to [N.C.G.S. §] 7B-1102, shall be

 verified by the petitioner or movant.” Id. (emphasis added). The significance of the

 phrase “shall be verified" is the sole issue before us in this case.

¶7 In In re T.R.P., we examined an analogous statutory provision requiring that

 a petition alleging a juvenile to be abused, neglected, or dependent “shall be . . .

 verified before an official authorized to administer oaths.” 360 N.C. at 591 (quoting

 N.C.G.S. § 7B-403(a) (2005)). In that case, the Wilkes County Department of Social

 Services (WCDSS) filed a juvenile petition alleging that a juvenile was neglected, but

 the petition “was neither signed nor verified by the Director of WCDSS or any

 authorized representative thereof.” Id. at 589. After the trial court entered an order
 IN RE O.E.M.

 2021-NCSC-120

 Opinion of the Court

 granting legal custody of the juvenile to WCDSS and physical custody to the juvenile’s

 father, the respondent-mother appealed, contending that “the trial court lacked

 jurisdiction to enter the challenged review order because the juvenile petition was

 not verified as required by law.” Id. The Court of Appeals agreed with respondent-

 mother and vacated the custody order for lack of subject matter jurisdiction. In re

 T.R.P., 173 N.C. App. 541 (2005). In a 4-3 decision, this Court affirmed the decision

 of the Court of Appeals.

¶8 The majority began by describing the General Assembly’s expansive authority

 to “within constitutional limitations, [ ] fix and circumscribe the jurisdiction of the

 courts of this State.” In re T.R.P., 360 N.C. at 590 (quoting Bullington v. Angel, 220

 N.C. 18, 20 (1941)). According to the majority, when the legislature requires a party

 “follow a certain procedure” to invoke the trial court’s subject matter jurisdiction, a

 trial court lacks authority to act if the party fails to follow that procedure. Id. (quoting

 Eudy v. Eudy, 288 N.C. 71, 75 (1975)). Thus, the majority recognized the general rule

 that “for certain causes of action created by statute, the requirement that pleadings

 be signed and verified ‘is not a matter of form, but substance, and a defect therein is

 jurisdictional.’ ” Id. (quoting Martin v. Martin, 130 N.C. 27, 28 (1902)). The majority

 found ample reason to extend this general rule to causes of action created by North

 Carolina’s juvenile code.

¶9 According to the majority, “verification of a juvenile petition is no mere
 IN RE O.E.M.

 2021-NCSC-120

 Opinion of the Court

 ministerial or procedural act.” Id. at 591. Instead, the majority reasoned that in a

 proceeding which “frequently results in DSS’ immediate interference with a

 respondent's constitutionally-protected right to parent his or her children,” id. at

 591–92, the verification requirement serves as a “vital link in the chain of proceedings

 carefully designed to protect children at risk on one hand while avoiding undue

 interference with family rights on the other,” id. at 591. The majority emphasized

 “[t]he gravity of a decision to proceed and the potential consequences of filing a

 petition” alleging that a juvenile is abused, neglected, or dependent. Id. at 592. In

 light of

 the magnitude of the interests at stake in juvenile cases
 and the potentially devastating consequences of any errors,
 the General Assembly's requirement of a verified petition
 is a reasonable method of assuring that our courts exercise
 their power only when an identifiable government actor
 “vouches” for the validity of the allegations in such a
 freighted action.

 Id. In addition, the majority noted that “for more than twenty years our Court of

 Appeals has consistently held that subject matter jurisdiction over juvenile actions is

 contingent upon verification of the petition,” and that the General Assembly had

 never amended the relevant provisions of the juvenile code to modify or abrogate this

 holding. Id. at 594.

 B. The verification requirement is jurisdictional with regard to both
 petitions and motions in the cause filed pursuant to N.C.G.S. § 7B-1102.

¶ 10 Although In re T.R.P. did not directly address the statute or circumstances at
 IN RE O.E.M.

 2021-NCSC-120

 Opinion of the Court

 issue in this case, both parties agree In re T.R.P. is relevant. According to respondent-

 father, the exact same reasons which compelled this Court to hold that the

 verification requirement contained in N.C.G.S. § 7B-403(a) was jurisdictional should

 compel us to hold that the verification requirement contained in N.C.G.S. § 7B-

 1104—which mirrors subsection 7B-403(a) in providing that a petition or motion

 “shall be verified”—is also jurisdictional. The appellee, Oscar’s guardian ad litem

 (GAL), acknowledges that under In re T.R.P., the verification requirement contained

 in N.C.G.S. § 7B-1102 is jurisdictional with regards to a petition for termination of

 parental rights. Nonetheless, the GAL contends that In re T.R.P. does not control

 when, as in this case, the party seeking termination initiates termination proceedings

 with the filing of a motion in the cause. In this circumstance, the GAL argues, and

 the dissent agrees, that the verification requirement should be treated as a merely

 “procedural” requirement and that DSS’ failure to verify its motion does not

 dispossess the trial court of the jurisdiction it obtained when DSS filed a properly

 verified petition to have Oscar adjudicated neglected and dependent. We reject this

 argument for three reasons.

 1. The statutory text of N.C.G.S. § 7B-1104 does not support drawing any
 distinction between petitions and motions in the cause regarding
 application of the verification requirement.

¶ 11 The first problem with the GAL’s argument is that it is entirely inconsistent

 with the text of N.C.G.S. § 7B-1104. “The goal of statutory interpretation is to
 IN RE O.E.M.

 2021-NCSC-120

 Opinion of the Court

 determine the meaning that the legislature intended upon the statute's enactment.”

 State v. Rankin, 371 N.C. 885, 889 (2018). “When the meaning is clear from the

 statute's plain language, we ‘give effect to the plain meaning of the statute, and

 judicial construction of legislative intent is not required.’ ” In re J.E.B., 376 N.C. 629,

 2021-NCSC-2, ¶ 11 (quoting Winkler v. N.C. State Bd. of Plumbing, 374 N.C. 726, 730

 (2020)). Because “[t]he intent of the General Assembly may be found first from the

 plain language of the statute,” Lenox, Inc. v. Tolson, 353 N.C. 659, 664 (2001), we

 typically “begin[ ] with an examination of the plain words of the statute,” Correll v.

 Div. of Soc. Servs., 332 N.C. 141, 144 (1992).

¶ 12 In In re T.R.P., we concluded that the phrase “shall be verified” supplied

 “unambiguous statutory language [which] mandates our holding” that the General

 Assembly intended the verification requirement to be jurisdictional. 360 N.C. at 594.

 The GAL does not ask us to overrule In re T.R.P., and we see no cause to disturb a

 well-reasoned opinion which itself reaffirmed a longstanding legal principle. Thus,

 we are “bound by prior precedent[ under ] the doctrine of stare decisis.” Bacon v. Lee,

 353 N.C. 696, 712 (2001). Under In re T.R.P., the phrase “shall be verified” as used in

 the various provisions of our juvenile code imposes a jurisdictional requirement.

 Therefore, the argument that the verification requirement is jurisdictional when

 applied to a “petition” but procedural when applied to a “motion pursuant to [N.C.G.S.

 §] 7B-1102” is irreconcilable with the text of N.C.G.S. § 7B-1104, unless In re T.R.P.
 IN RE O.E.M.

 2021-NCSC-120

 Opinion of the Court

 is to be overruled.

¶ 13 The plain words of N.C.G.S. § 7B-1104 make clear that the General Assembly

 did not intend for the verification requirement to operate differently for a petition for

 termination as compared to a motion in the cause. The qualifier “shall be verified”

 modifies both “[t]he petition” and “motion pursuant to [N.C.G.S. §] 7B-1102” in the

 same way without drawing any distinction between the two. The phrase “shall be

 verified” does not mean one thing when it modifies “[t]he petition” and another when

 it modifies “motion.” The General Assembly knows how to attach distinct legal

 consequences to different acts or omissions described in a single statute. See, e.g.,

 N.C.G.S. § 1A-1, Rule 41 (2019) (providing for different consequences when a claim is

 dismissed without prejudice by stipulation, dismissed without prejudice by the court,

 or dismissed involuntarily upon motion of the defendant). In this case, the General

 Assembly chose not to make any distinction.

¶ 14 The dissent advances various policy arguments in support of its contention

 that it is inappropriate to treat the words “shall be verified” as jurisdictional in this

 context. Notwithstanding the substance of those arguments, the dissent makes no

 effort to reconcile them with the text and structure of N.C.G.S. § 7B-1104 and the

 binding precedent we established in In re T.R.P. Absent any indication that the

 legislature intended the phrase “shall be verified” to have one meaning in one place

 and an entirely different meaning in another place—and as long as In re T.R.P.
 IN RE O.E.M.

 2021-NCSC-120

 Opinion of the Court

 remains good law—we are bound to give effect to the words the legislature chose to

 deploy. This Court is not at liberty to treat the verification requirement as

 jurisdictional in one context and procedural in another. Doing so would require us to

 “read into a statute language that simply is not there.” N.C. Farm Bureau Mut. Ins.

 Co., Inc. v. Lunsford, 2021-NCSC-83, ¶ 22 (cleaned up).

 2. Treating the verification requirement as jurisdictional in the context
 of a motion in the cause serves important constitutional interests.

¶ 15 The second problem with the GAL’s argument is that it ignores the concerns

 which underpinned our holding in In re T.R.P. and which are no less present when a

 party initiates a termination proceeding via a motion in the cause. According to the

 GAL, it is appropriate to treat the verification requirement as jurisdictional when a

 termination petition is filed because, in that circumstance, the verification

 requirement “assur[es] that our courts exercise their power only when an identifiable

 government actor ‘vouches’ for the validity of the allegations in such a freighted

 action.” However, the GAL contends that treating the verification requirement as

 jurisdictional is redundant when a motion for termination is filed regarding a child

 already subject to an abuse, neglect, or dependency proceeding because in this

 circumstance the movant “ha[s] already vouched for the validity of the allegations

 underlying the TPR motion.”

¶ 16 As we recognized in In re T.R.P., the legislature’s choice to require a party to

 verify its filing before beginning a juvenile proceeding “is a minimally burdensome
 IN RE O.E.M.

 2021-NCSC-120

 Opinion of the Court

 limitation on government action, designed to ensure that a [DSS] intervention that

 has the potential to disrupt family bonds is based upon valid and substantive

 allegations before the court's jurisdiction is invoked.” 360 N.C. at 598. The same holds

 true for a termination proceeding regardless of the manner in which the proceeding

 begins.4

¶ 17 The allegations underlying a juvenile abuse, neglect, or dependency petition

 may overlap with, but are necessarily not the same as, the allegations underlying a

 motion for termination regarding the same juvenile. A trial court’s decision to

 terminate a parent’s parental rights depends upon evidence of the parent’s conduct

 subsequent to an initial adjudication of the juvenile as abused, neglected, or

 dependent. See In re Ballard, 311 N.C. 708, 716 (1984) (“The petitioner seeking

 termination bears the burden of showing by clear, cogent and convincing evidence

 that such neglect exists at the time of the termination proceeding.”) (emphasis added);

 see also In re B.O.A., 372 N.C. 372, 385 (2019) (“[T]he extent to which a parent has

 reasonably complied with [a] case plan provision is, at minimum, relevant to the

 determination of whether that parent's parental rights in his or her child are subject

 4 The dissent acknowledges that In re T.R.P. establishes that a failure to verify
 “pleadings and petitions commencing an action and their amendments thereto” is a
 jurisdictional defect, but suggests that a motion in the cause does something different. Yet,
 in this context, a motion in the cause for termination serves the exact same function as a
 petition for termination: It is what a party files in order to “commenc[e]” a termination
 proceeding, which is separate and distinct from an underlying juvenile proceeding.
 IN RE O.E.M.

 2021-NCSC-120

 Opinion of the Court

 to termination for failure to make reasonable progress.”) (emphasis added).

¶ 18 For example, in this case, DSS’ motion to terminate respondent-father’s

 parental rights included new allegations that he had “made minimal efforts to

 complete his case plan,” “failed to demonstrate benefit from services directed toward

 remediating the issues that led to the child being placed out of [his] home,” “fail[ed]

 . . . to make regular inquiry with regard to the minor child and aggressively work

 toward reunification,” and failed to “show[ ] the ability to refrain from the use of

 controlled substances and he is unlikely to quit the use of said substances even with

 substance abuse treatment and medications.” None of this was known at the time the

 original juvenile petition was verified. The trial court could not have determined that

 grounds existed to terminate respondent-father’s parental rights without entering

 findings of fact addressing these allegations. It is in no way redundant to require DSS

 to verify a new motion containing new allegations regarding a parent’s conduct which

 could not possibly have been included in an initial abuse, neglect, or dependency

 petition.

¶ 19 Further, the stakes for a parent are considerably higher in a termination

 proceeding than in an abuse, neglect, or dependency proceeding. Although the latter

 carries with it “the potential to disrupt family bonds,” In re T.R.P., 360 N.C. at 598,

 the former may result in the permanent severance of the parent-child relationship

 and the extinguishment of an individual’s constitutional status as a parent. Of course,
 IN RE O.E.M.

 2021-NCSC-120

 Opinion of the Court

 the “paramount importance of the child's best interest and the need to place children

 in safe, permanent homes within a reasonable time” weigh heavily throughout every

 phase of a juvenile proceeding. Id. at 601 (quoting In re R.T.W., 359 N.C. 539, 549–

 50 (2005)). Yet our juvenile code also incorporates the protections afforded to all

 parents under the Due Process Clause of the Fourteenth Amendment. See, e.g., In re

 E.B., 375 N.C. 310, 316 (2020).5 The General Assembly chose to mandate that DSS

 verify the allegations underpinning an action seeking to interfere with the parent-

 child relationship. This choice helps ensure that the State appropriately balances its

 interest in expeditiously achieving permanency for at-risk juveniles with its interest

 in not improperly abrogating North Carolinians’ constitutionally guaranteed

 parental rights and not subjecting juveniles to the disruption occasioned by a

 termination proceeding except when necessary. These concerns are present

 regardless of whether DSS has filed a petition for termination or a motion in the

 cause.

 3. A trial court’s jurisdiction to conduct an abuse, neglect, or dependency
 proceeding does not automatically extend to a termination proceeding.

¶ 20 Finally, we reject the GAL’s argument that DSS’ filing of a properly verified

 N.C.G.S. § 7B-1100(2) provides that one purpose of Article 11 is “to protect all
 5

 juveniles from the unnecessary severance of a relationship with biological or legal parents.”
 (Emphasis added.) The General Assembly did not intend for—and the constitution does not
 allow—courts to disregard the procedural protections afforded to biological and legal parents,
 which protect both the parents’ constitutional parental rights and juveniles from
 “unnecessary severance” of the parent-child relationship.
 IN RE O.E.M.

 2021-NCSC-120

 Opinion of the Court

 petition alleging Oscar was neglected and dependent vests the trial court with

 jurisdiction to terminate respondent-father’s parental rights. According to the GAL,

 we need not treat the verification requirement as jurisdictional when DSS files a

 motion for termination after previously filing a properly verified juvenile petition,

 because the trial court need not “re-establish” the jurisdiction it possessed over the

 underlying juvenile proceedings. This argument is inconsistent with our precedents

 and with the jurisdictional provisions of the juvenile code.

¶ 21 A petitioner or movant must satisfy distinct requirements to vest a trial court

 with jurisdiction to conduct a juvenile proceeding on the one hand and a termination

 proceeding on the other. Compare N.C.G.S. § 7B-200(b) (listing certain jurisdictional

 requirements for abuse, neglect, and dependency proceedings) with N.C.G.S. § 7B-

 1101 (listing certain jurisdictional requirements for termination proceedings).6 A trial

 court’s authority to adjudicate a child abused, neglected, or dependent does not confer

 upon the court the authority to terminate that child’s parents’ parental rights. See

 In re A.L.L., 376 N.C. 99, 105 (2020) (“[A] trial court lacks jurisdiction over a

 termination petition if the requirements of N.C.G.S. § 7B-1101 have not been met,

 6 In addition, there is a difference between the requirements for establishing the
 jurisdiction of a court to act as a general matter and the requirements for establishing that
 a court may exercise its jurisdiction in a particular case. Thus, as In re T.R.P. recognized,
 even if a trial court is generally a proper forum for adjudicating the status of a child because
 the requirements of N.C.G.S. § 7B-200(b) or N.C.G.S. § 7B-1101 have been met, a particular
 court may lack jurisdiction over a particular child because other jurisdictional prerequisites
 have not yet been satisfied.
 IN RE O.E.M.

 2021-NCSC-120

 Opinion of the Court

 even if there is an underlying abuse, neglect, or dependency action concerning that

 juvenile in the district in which the termination petition has been filed.”). If a

 petitioner or movant fails to meet all of the requirements for establishing the court’s

 jurisdiction over a termination proceeding, then the court lacks jurisdiction to

 conduct a termination proceeding, regardless of whether the trial court previously

 exercised jurisdiction over the child for other purposes.

¶ 22 The GAL’s reliance on a recent decision from this Court in support of its

 argument on this issue is misplaced. In its brief, the GAL points to language from our

 decision in In re K.S.D-F., where we stated that “[j]urisdiction arises upon the filing

 of ‘a properly verified juvenile petition’ and extends ‘through all subsequent stages of

 the action.’ ” 375 N.C. 626, 633 (2020) (quoting In re T.R.P., 360 N.C. at 593). The

 GAL contends that In re K.S.D-F. means that once a trial court obtains jurisdiction

 over a juvenile through the filing of a properly verified juvenile petition, the trial

 court’s jurisdiction continues up through and including a termination proceeding.

 However, the GAL’s interpretation of this language misconstrues both In re K.S.D-F.

 and the provisions of the juvenile code we addressed in that case.

¶ 23 In In re K.S.D-F., the respondent-mother asserted that the trial court lacked

 jurisdiction to terminate her parental rights because DSS did not lawfully have

 custody of the children at the time it filed its motion for termination. Id. at 632. If the

 respondent-mother’s assertion was correct, DSS would have lacked standing to file a
 IN RE O.E.M.

 2021-NCSC-120

 Opinion of the Court

 termination motion under N.C.G.S. § 7B-1103(a)(3) (2019), and the trial court would

 have lacked jurisdiction to conduct termination proceedings. Id. According to the

 respondent-mother, when the trial court had, in an earlier proceeding, “determined

 that a permanent plan for custody and guardianship with [foster parents] was in the

 children's best interests and awarded custody and guardianship to the [foster

 parents],” the trial court’s jurisdiction over the children ceased. Id. at 633. Thus, the

 respondent-mother claimed that the trial court lacked the legal authority to enter a

 subsequent order placing the children back in DSS custody and by extension that

 DSS lacked standing to file a termination motion.

¶ 24 We rejected the respondent-mother’s argument, noting that when the trial

 court entered an order placing the children with foster parents, “[t]he trial court

 specifically retained jurisdiction and provided that further hearings could be brought

 upon a motion by any party.” Id. Therefore, when DSS subsequently filed a motion to

 reopen proceedings, the trial court did possess the authority to place the children in

 DSS custody. Id. at 633–34. Because the trial court did have jurisdiction to enter the

 nonsecure custody order, DSS legally had custody of the juveniles, such that DSS

 “had standing to file the motion to terminate respondents’ parental rights” which

 vested “the trial court [with] jurisdiction over the termination action.” Id. at 635.

¶ 25 Nothing in In re K.S.D-F. suggested that the trial court’s jurisdiction over an

 underlying abuse, neglect, or dependency proceeding was sufficient, standing alone,
 IN RE O.E.M.

 2021-NCSC-120

 Opinion of the Court

 to establish the court’s jurisdiction over a subsequent termination proceeding.

 Indeed, our reasoning in In re K.S.D-F. is predicated on the assumption that

 jurisdiction does not continue from the underlying juvenile proceeding to a

 subsequent termination proceeding. If the GAL’s theory is correct, there would have

 been no reason for this Court to reach the question of whether DSS had standing to

 file a motion to terminate the respondent-mother’s parental rights in In re K.S.D-F.

 because the trial court indisputably had jurisdiction to conduct the underlying

 juvenile proceedings after DSS filed a properly verified petition alleging the juvenile

 was neglected. We would have had no reason to decide whether there existed an

 independent basis for the trial court’s authority to enter an order terminating the

 respondent-mother’s parental rights.

¶ 26 There is nothing anomalous about requiring a party to establish that the trial

 court possessed jurisdiction to conduct a termination proceeding even when the court

 previously had jurisdiction to conduct a juvenile proceeding—it is simply what our

 juvenile code requires. See, e.g., In re J.M., 797 S.E.2d 305, 307 (N.C. Ct. App. 2016)

 (holding that the Durham County District Court “lacked jurisdiction to hear the

 termination of parental rights petition” even though the court previously exercised

 jurisdiction in an underlying juvenile proceeding, because “none of the[ independent

 jurisdictional] requirements were met”). Accordingly, we reject the GAL’s argument

 that the trial court in this case possessed subject matter jurisdiction to terminate
 IN RE O.E.M.

 2021-NCSC-120

 Opinion of the Court

 respondent-father’s parental rights in Oscar notwithstanding DSS’ failure to verify

 its motion for termination.

 II. Conclusion

¶ 27 In all significant respects, this case is indistinguishable from our decision in

 In re T.R.P. As in In re T.R.P., the party which sought a judicial order addressing the

 status of a juvenile failed to comply with a requirement that the filing be verified

 contained in a provision of North Carolina’s juvenile code. As in In re T.R.P., the trial

 court entered an order notwithstanding this deficiency. The only salient difference is

 that in this case, DSS filed a motion rather than a petition. However, this difference

 is not legally significant. Subsection 7B-1104 draws no distinction between the

 verification requirement as it applies to petitions and motions in the cause filed

 pursuant to N.C.G.S. § 7B-1102. The interests the verification requirement serve do

 not vary with the manner in which a termination proceeding is initiated. A trial

 court’s jurisdiction to conduct an underlying abuse, neglect, or dependency

 proceeding does not automatically provide the court with jurisdiction to conduct a

 termination proceeding.

¶ 28 Accordingly, the verification requirement contained in N.C.G.S. § 7B-1104 is

 jurisdictional as applied to both a petition for termination and a motion for

 termination. Because DSS failed to verify its motion for termination of respondent’s

 parental rights, “the trial court ha[d] no power to act.” In re T.R.P., 360 N.C. at 598.
 IN RE O.E.M.

 2021-NCSC-120

 Opinion of the Court

Therefore, we vacate the trial court order terminating respondent’s parental rights

in Oscar and remand for further proceedings not inconsistent with this opinion.

 VACATED.
 Justice BARRINGER, dissenting.

¶ 29 Ending a parent-child relationship is a decision the court
 must weigh carefully, mindful of constitutional protections
 and statutory safeguards. Those safeguards, however, are
 to be applied practically so that the best interests of the
 child—the polar star in controversies over child neglect and
 custody—are the paramount concern.

 In re L.M.T., 367 N.C. 165, 173 (2013); see also In re Montgomery, 311 N.C. 101, 109

 (1984).

¶ 30 Here, not only does the majority’s result disregard this paramount concern, but

 the majority does so by ignoring the legislature’s stated policy goals with respect to

 termination of parental rights, the plain language of the relevant statutes, and the

 statutory scheme of the Juvenile Code. Accordingly, I respectfully dissent.

¶ 31 In this matter, the Transylvania County Department of Social Services (DSS)

 filed a verified juvenile petition alleging the neglect and dependency of Oscar on 27

 November 2017. Subsequently, the trial court adjudicated Oscar a neglected and

 dependent juvenile. Then, in the same cause, DSS filed a motion for termination of

 parental rights on 25 March 2020 pursuant to N.C.G.S. § 7B-1102(a). However, the

 motion was not verified. After a hearing on the termination-of-parental-rights

 motion, the trial court terminated respondent’s parental rights by order entered on

 21 August 2020.
 IN RE O.E.M.

 2021-NCSC-120

 Barringer, J., dissenting

¶ 32 No one complained of the lack of verification at any time before the trial court.

 Respondent’s sole basis for his appeal of the termination-of-parental-rights order is

 that “[t]he trial court lacked subject matter jurisdiction to terminate [respondent’s]

 parental rights because [DSS] failed to verify its termination[-]of[-]parental[-]rights

 motion in the cause as required by N.C.[G.S.] § 7B-1104.”

¶ 33 The legislature has expressly “declare[d] as a matter of legislative policy with

 respect to termination of parental rights” four purposes of Article 11 of the Juvenile

 Code in N.C.G.S. § 7B-1100. N.C.G.S. § 7B-1100 (2019). As relevant to this matter,

 the legislature established that the “general purpose of [Article 11] is to provide

 judicial procedures for terminating the legal relationship between a juvenile and the

 juvenile’s biological or legal parents when the parents have demonstrated that they

 will not provide the degree of care which promotes the healthy and orderly physical

 and emotional well-being of the juvenile,” N.C.G.S. § 7B-1100(1), and “the further

 purpose of [Article 11 is] to recognize the necessity for any juvenile to have a

 permanent plan of care at the earliest possible age, while at the same time

 recognizing the need to protect all juveniles from the unnecessary severance of a

 relationship with biological or legal parents,” N.C.G.S. § 7B-1100(2).

¶ 34 Therefore, the clear statutory language instructs us to interpret the statutes

 as setting forth judicial procedures—not subject matter jurisdictional requirements.

 To comply with this statutory mandate, we must construe statutes in Article 11 to
 IN RE O.E.M.

 2021-NCSC-120

 Barringer, J., dissenting

 set forth judicial procedures unless the plain language of the statute indicates it is a

 jurisdictional requirement.

¶ 35 Additionally, in almost all situations, making a judicial procedure a

 requirement for the trial court’s subject matter jurisdiction directly contradicts the

 text of Article 11: that juveniles should receive a permanent plan of care at the

 earliest possible age. See N.C.G.S. § 7B-1100(2). Challenges to jurisdiction, unlike

 judicial procedures, can be raised for the first time on appeal and, if successful, render

 the underlying proceeding void ab initio. In re T.R.P., 360 N.C. 588, 590, 595 (2006).

¶ 36 In matters arising under the Juvenile Code, the legislature by enacting

 statutes has established the trial court’s subject matter jurisdiction. In re K.J.L., 363

 N.C. 343, 345 (2009). It is the legislature—not the courts—that “can, within the

 bounds of the Constitution, set whatever limits it wishes on the possession or exercise

 of that jurisdiction.” In re J.M., 377 N.C. 298, 2021-NCSC-48, ¶ 15 (quoting In re

 M.I.W., 365 N.C. 374, 377 (2012)). As enacted by the legislature, the trial court “has

 exclusive, original jurisdiction over any case involving a juvenile who is alleged to be

 abused, neglected, or dependent,” N.C.G.S. § 7B-200(a) (2019), and once obtained,

 “jurisdiction shall continue until terminated by order of the [trial] court or until the

 juvenile reaches the age of [eighteen] years or is otherwise emancipated, whichever

 occurs first,” N.C.G.S. § 7B-201(a) (2019). Thus, “[w]hen the district court is

 exercising jurisdiction over a juvenile and the juvenile’s parent in an abuse, neglect,
 IN RE O.E.M.

 2021-NCSC-120

 Barringer, J., dissenting

 or dependency proceeding, a person or agency specified in [N.C.]G.S. [§] 7B-1103(a)

 may file in that proceeding a motion for termination of the parent’s rights in relation

 to the juvenile.” N.C.G.S. § 7B-1102(a) (2019).

¶ 37 As recognized by this Court in In re T.R.P., “the provisions in Chapter 7B

 establish one continuous juvenile case with several interrelated stages, not a series

 of discrete proceedings.” 360 N.C. at 593. Therefore, as it relates to verification, “[a]

 trial court’s subject matter jurisdiction over all stages of a juvenile case is established

 when the action is initiated with the filing of a properly verified petition.” Id.

 (emphasis added); see also In re K.S.D.-F., 375 N.C. 626, 633 (2020) (“Jurisdiction

 arises upon the filing of a properly verified juvenile petition and extends through all

 subsequent stages of the action.” (cleaned up)).

¶ 38 Further, the legislature has limited the trial court’s jurisdiction as to

 termination of parental rights by enacting N.C.G.S. § 7B-1101, which states as

 follows:

 § 7B-1101 Jurisdiction

 The court shall have exclusive original jurisdiction to hear
 and determine any petition or motion relating to
 termination of parental rights to any juvenile who resides
 in, is found in, or is in the legal or actual custody of a county
 department of social services or licensed child-placing
 agency in the district at the time of filing of the petition or
 motion. The court shall have jurisdiction to terminate the
 parental rights of any parent irrespective of the age of the
 parent. Provided, that before exercising jurisdiction under
 this Article, the court shall find that it has jurisdiction to
 IN RE O.E.M.

 2021-NCSC-120

 Barringer, J., dissenting

 make a child-custody determination under the provisions
 of G.S. 50A-201, 50A-203, or 50A-204. The court shall have
 jurisdiction to terminate the parental rights of any parent
 irrespective of the state of residence of the parent.
 Provided, that before exercising jurisdiction under this
 Article regarding the parental rights of a nonresident
 parent, the court shall find that it has jurisdiction to make
 a child-custody determination under the provisions of G.S.
 50A-201 or G.S. 50A-203, without regard to G.S. 50A-204
 and that process was served on the nonresident parent
 pursuant to G.S. 7B-1106. Provided, further, that the clerk
 of superior court shall have jurisdiction for adoptions under
 Chapter 48 of the General Statutes.

 N.C.G.S. § 7B-1101 (2019); see also In re A.L.L., 376 N.C. 99, 105 (2020) (“[A] trial

 court lacks jurisdiction over a termination petition if the requirements of N.C.G.S.

 § 7B-1101 have not been met, even if there is an underlying abuse, neglect, or

 dependency action concerning that juvenile in the district in which the termination

 petition has been filed.”).

¶ 39 Thus, the Juvenile Code, its articles, and statutes, as previously recognized by

 this Court, all establish that jurisdiction in this matter is vested with the trial court

 upon the filing of the juvenile petition and continues uninterrupted until the

 juvenile’s majority, emancipation, or a trial court’s order even for termination of

 parental rights if the legislature’s enactment regarding jurisdiction, N.C.G.S. § 7B-

 1100, is satisfied.

¶ 40 Here, DSS failed to verify a motion for termination of parental rights that it

 filed in a pending juvenile abuse, neglect, and dependency proceeding. But DSS had
 IN RE O.E.M.

 2021-NCSC-120

 Barringer, J., dissenting

 already verified the juvenile petition underlying the action, and there is no contention

 that the trial court lacked jurisdiction under N.C.G.S. § 7B-1101. While this Court

 has held that the verification requirement for a juvenile petition alleging abuse,

 neglect, or dependency pursuant to N.C.G.S § 7B-403(a) was jurisdictional in In re

 T.R.P., 360 N.C. at 588, this appeal involves an unverified motion filed pursuant to

 N.C.G.S. § 7B-1102(a) in the abuse, neglect, or dependency cause. Thus, to the extent,

 our prior caselaw has held that pleadings and petitions commencing an action and

 their amendments thereto are jurisdictional defects “for certain causes of action

 created by statute,” id. (citing Martin v. Martin, 130 N.C. 19, 20 (1902)1 (discussing

 an unverified amendment to a complaint in a divorce action)), they do not resolve the

 issue before this Court now.

¶ 41 Further, nothing about the statutory language or statutory scheme supports

 the view that verification of a motion for termination of parental rights in a pending

 juvenile case is required for the trial court’s subject matter jurisdiction. “In

 construing statutory language, ‘it is our duty to give effect to the words actually used

 in a statute and not to delete words used or to insert words not used.’ ” In re B.O.A.,

 372 N.C. 372, 380 (2019) (quoting Lunsford v. Mills, 367 N.C. 618, 623 (2014)). Here,

 N.C.G.S. § 7B-1104 is entitled “Petition or motion” and makes no reference to

 1 Notably, as the dissent in In re T.R.P. observed, Martin was addressed by this Court

 prior to the adoption of notice pleading. In re T.R.P., 360 N.C. 588, 606 (2006) (Newby, J.,
 dissenting).
 IN RE O.E.M.

 2021-NCSC-120

 Barringer, J., dissenting

 jurisdiction. N.C.G.S. § 7B-1104 (2019). Section 7B-1101, previously quoted herein

 and entitled “Jurisdiction,” which addresses jurisdiction for termination-of-parental-

 rights motions, also contains no cross-reference to N.C.G.S. § 7B-1104 or reference to

 a verification requirement. N.C.G.S. § 7B-1101. This Court has previously recognized

 that in these circumstances—when the legislature neither mentions jurisdiction in

 the statute at issue nor references it in the statute entitled “jurisdiction”—the

 legislature did not intend such statute’s requirements “to function as prerequisites

 for [trial] court jurisdiction.” In re D.S., 364 N.C. 184, 193–94 (2010).2

¶ 42 Finally, deeming verification of a motion in the cause a jurisdictional

 requirement in an abuse, neglect, or dependency proceeding cannot be justified. This

 Court addressed in In re T.R.P. the verification requirement for initiating “[a]

 juvenile abuse, neglect, or dependency action under Chapter 7B [that] may be based

 on an anonymous report.” 360 N.C. at 591. Unlike a juvenile petition, the filing of a

 termination-of-parental-rights motion in a juvenile abuse, neglect, or dependency

 2 While the majority acknowledges that In re T.R.P. did not address the statute and

 issue before this Court in this matter, it nevertheless relies solely on that opinion, deeming
 itself bound, while ignoring this Court’s other precedent like In re D.S. and other precedent
 on statutory construction. Such precedent cannot be reconciled with a reading that this
 Court’s construction in In re T.R.P. of N.C.G.S. § 7B-403(a) (2005) (“[T]he petition shall be
 drawn by the [DSS] director, verified before an official authorized to administer oaths, and
 filed by the clerk, recording the date of filing.”) mandates that anytime something “shall be
 verified,” it is a jurisdictional requirement. In re T.R.P., 360 N.C. at 591. In fact, In re T.R.P.
 acknowledges the contrary: “[F]or certain causes of action created by statute, the requirement
 that pleadings be signed and verified is not a matter of form, but substance, and a defect
 therein is jurisdictional.” Id. (cleaned up) (emphasis added).
 IN RE O.E.M.

 2021-NCSC-120

 Barringer, J., dissenting

 proceeding is frequently based on the underlying verified juvenile abuse, neglect, or

 dependency petition and subsequent conduct and course of dealings between the

 parents, DSS, the juvenile, and the guardian ad litem, much of which the trial court

 is privy to from hearings. Section 7B-906.1(a) states as follows:

 The [trial] court shall conduct a review hearing within 90
 days from the date of the initial dispositional hearing held
 pursuant to [N.C.]G.S. [§] 7B-901. Review hearings shall
 be held at least every six months thereafter. Within
 [twelve] months of the date of the initial order removing
 custody, there shall be a review hearing designated as a
 permanency planning hearing. Review hearings after the
 initial permanency planning hearing shall be designated
 as permanency planning hearings. Permanency planning
 hearings shall be held at least every six months thereafter
 or earlier as set by the court to review the progress made
 in finalizing the permanent plan for the juvenile, or if
 necessary, to make a new permanent plan for the juvenile.

 N.C.G.S. § 7B-906.1(a) (2019)

¶ 43 Further, there is no change in the status, physically or legally, between the

 parent and the juvenile upon the filing of a motion in the cause to terminate parental

 rights. In other words, it does not “result[ ] in DSS’[s] immediate interference with a

 respondent’s constitutionally-protected right to parent his or her children.” In re

 T.R.P., 360 N.C. at 591–92. Instead, the relationship between the parent and the

 juvenile does not change until an adjudicatory hearing—where the movant has the

 burden of proof; the rules of evidence for civil actions apply; and the trial court must

 take evidence, find facts based on clear, cogent, and convincing evidence, adjudicate
 IN RE O.E.M.

 2021-NCSC-120

 Barringer, J., dissenting

 the existence of grounds for termination pursuant to N.C.G.S. § 7B-1111, and reduce

 to writing its findings and conclusions—and a dispositional hearing to determine

 “whether terminating the parent’s rights is in the juvenile’s best interest.” N.C.G.S.

 § 7B-1110(a) (2019); see N.C.G.S. §§ 7B-1109 to -1110. Thus, while the gravity of filing

 a termination-of-parental-rights motion is undeniable, there are no identifiable

 material consequences to the parent or the juvenile from the lack of verification of a

 motion for termination of parental rights in an abuse, neglect, or dependency

 proceeding over which the trial court is exercising jurisdiction over both a juvenile

 and the juvenile’s parent pursuant to a verified petition. Thus, unlike this Court in

 In re T.R.P., the majority reads into a legislative enactment, devoid of reference to

 jurisdiction, an intent to make a jurisdictional requirement without substantiating

 reasons. See In re T.R.P., 360 N.C. at 591.

¶ 44 In conclusion, the verification requirement set forth in N.C.G.S. § 7B-1104 for

 a motion for termination of parental rights filed in an abuse, neglect, or dependency

 proceeding where the trial court has subject matter jurisdiction pursuant to a verified

 abuse, neglect, or dependency juvenile petition cannot and should not be deemed

 jurisdictional by this Court. Instead, it is a procedural requirement.

 Chief Justice NEWBY and Justice BERGER join in this dissenting opinion.