BUTLER v. SOUTH CAROLINA AND GEORGIA EXTENSION RAILROAD COMPANY.

(Filed February 25, 1902.)

1. EVIDENCE—*Expert Evidence—Opinion Evidence—Examination of Witnesses—Cross-examination.*

An expert witness can not be discredited on cross-examination by reading an opposite opinion from a text-book and asking him whether it is correct.

2. EVIDENCE—*Res Gestae.*

In an action against a railroad company for personal injuries, a statement as to how plaintiff was hurt, made after the injury, not shown to have been by or in the hearing of the plaintiff, nor to have been a part of the *res gestae*, is incompetent.

3. EVIDENCE.

In an action against a railroad company for personal injuries, sustained by plaintiff while riding in the caboose, evidence that the conductor and brakemen were careful, prudent men was incompetent.

ACTION by P. B. Butler and his wife against the South Carolina and Georgia Extension Railroad Company, heard by Judge *M. H. Justice* and a jury, at September Term, 1901, of the Superior Court of RUTHERFORD County.

The defendant offered as a witness the conductor of the

train (one McGuire), who testified he was not in the car when plaintiff was hurt, but went in the car afterwards, and learned then, for the first time, that she was hurt. She was at the time sitting upon a seat at the side of the car. The defendant's counsel proposed to ask this witness whether anyone told him when he went into the car, one minute after last coupling, how plaintiff was hurt. The plaintiff objected. The Court allowed this question to be asked and answered, provided any statement was made by plaintiffs, or either of them, or anyone in their presence or hearing. The witness stated that he did not remember who made the statement, and he did not know that the plaintiffs, or either of them, heard the statement. Witness did not know how long after feme plaintiff was hurt it was, as he did not know she was hurt until he went into the car. The Court thereupon sustained the plaintiff's objection. Defendant excepted.

From judgment for the plaintiffs, the defendant appealed.

*McBrayer & Justice,* and *Justice & Pless,* for the plaintiffs.
*Webb & Webb,* and *F. H. Busbee,* for the defendant.

COOK, J. Feme plaintiff, accompanied by her husband, was traveling upon defendant company's freight (or mixed train). When she entered the caboose, with her baby in her arms, the conductor of the train gave her a chair, which she accepted and occupied until the train stopped at one of its stations. At this station, Union Mills, the engine was taken from the freight cars and caboose, leaving them standing on the main track, and went upon the side-track to get some cars, and, upon returning, "shunted" two cars back against the cars on the main track with such force that the feme plaintiff was knocked out of her chair seven feet, falling upon the floor with her baby in her arms. She was picked up by her husband and placed upon a seat fastened to the side of the car, and afterwards, while sitting there, the engine struck the cars with

such violence that she was knocked from her seat and thrown eight or ten feet upon a chair, and her husband again helped her up. From these two falls she received injuries. While helping her up the last time, her husband testified, upon objection and exception by defendant, that she said to him "that she was hurt; * * * she was flooding from the fall, and to pull her clothes under her to prevent the blood getting on the floor, before taking her up." Her baby was about three months old, and before the fall, since the birth of the child and before, she had been well; but since the fall, she had been constantly suffering, and her person was lacerated and her womb dislocated, and nervous and sick. A short time before the trial, the doctors examined her and found her in an exceedingly nervous condition, suffering from a dislocated uterus and lacerated perineum; when she stood up the neck of the womb protruded out of the vagina.

The main contention between the parties upon the trial was as to the *cause* of these injuries—whether they resulted from the fall (or falls), or from some other cause. If from the fall (or falls), then defendant company would be liable, as insisted by plaintiff, for having negligently handled its train and thereby throwing the feme plaintiff upon the floor, producing this result. As to this cause the doctors (expert witnesses) disagreed. Dr. Downey testified, on behalf of plaintiff, that the injuries could have been caused by a fall, while Dr. Caldwell testified, on behalf of defendant, that they could not have been caused by a fall. Upon the cross-examination of Dr. Caldwell, the plaintiff's counsel asked him "if the text-book and standard authorities in the medical profession from which witness acquired his knowledge, did not differ with witness. Counsel for plaintiff further asked him if the editors of a book shown witness, entitled "American Text-Book of Surgery," and edited by ten or twelve physicians, were men of standing in his profession, and men whose writings were ac-

cepted as authority. Witness answered that they were men of such standing and their writings were accepted as authority, and said book was an authority in the medical profession. Counsel for plaintiff then asked if that book did not lay it down that the injury he found on the person of feme plaintiff could be produced by a fall ?" Counsel at the time was looking at said book. Defendant objected. The Court stated that this was proper upon cross-examination of defendant's witness, if for the purpose of testing his opinion, and not as substantive evidence. Defendant excepted. (Exception 7.) Counsel here showed the witness the book and proposed to read from it in formulating his question, and propounded one question from the book, to which defendant objected, and upon objection, the plaintiff's counsel withdrew the question, and afterwards proceeded without the book to cross-examine the witness as to the injury to the perineum. Defendant objected. The Court allowed it, if for the purpose of testing the witness' opinion. Defendant excepted. (Exception 8.) The plaintiff's counsel asked the witness about the "American Text-Book of Surgery," and said, "This book (apparently reading from it) says traumatic injury to the perineum may be produced by accidental injury, is that correct?" Objection overruled. (Exception 9.) Answered: "No, I think not; my opinion is as good as that book." The counsel for plaintiff at the time held the open book in his hand, and looking at it where the book said it.

In permitting plaintiff's counsel to state to the witness in presence of the jury *what* the "book says," his Honor erred, and a new trial must be had. Counsel could not have read the book to the jury in his argument. *Huffman v. Click,* 77 N. C., 55; *State v. Rogers,* 112 N. C., 874. This being settled, it must follow as a logical sequence that he could not state to the witness, as a fact, in the presence of the jury, that which he could not read or state to them in his argument. In

Greenleaf on Evidence (Vol. I, page 269, sec. 162, K. (16th Ed.), the author says: "It has been thought by some courts that an expert witness may be discredited by reading an opposite opinion from a professional treatise, or by being asked whether opposing views have not been laid down by writers, or whether he agrees with certain opposing opinions then read; and it is generally held that it can not be done, except that where a witness has referred to a treatise or to writers generally, as agreeing with him, the treatise may be shown not to agree with him, just as any other assertion of a witness may be disproved." In the case at bar, counsel said, "This book (apparently reading from it) says traumatic injury to the perineum may be produced by accidental injury, is that correct?" This question could not have the effect of contradicting the witness, for he had not referred to the book to sustain his opinion, or otherwise relied upon it; and the only effect it could have had was to inform the jury of the opinion therein expressed in contradiction of the opinion he entertained, which is in violation of the general rule stated by Greenleaf, and of the principle settled in the two decisions of our own Court, above cited. In *Fisher v. Railroad Co.,* 89 Cal., 379, on page 409, the learned Justice, De Haren, says: "The Court erred in permitting the attorney for the plaintiff, upon the cross-examination of the witness, Dr. Woolsey, to read extracts from certain medical books, and then ask the witness whether he agreed with the same or not." In *People v. Hall,* 48 Mich., 483; 42 Am. Rep., 477, it is held, that the reading of scientific books to the jury as evidence in itself, is not permissible; which is followed in *Marshall v. Brown,* 50 Mich., 148, wherein the learned Justice Cooley delivering the opinion of the Court, held that counsel could not be allowed to place statements of medical books before the jury by reading therefrom to the witness, and then asking him whether what had been read stated the facts therein set forth. In *Bloom-*

BUTLER *v.* RAILROAD.

*ington v. Shrock,* 110 Ill., 219; 51 Am. Rep., 679, the Court
held it to be error for counsel to read from standard authors
(medical) to the witness upon cross-examination, and then
ask if he agreed with the author—*very* analagous to the case
at bar.      There are other rulings to the same effect.      Plain-
tiff's counsel cite as an authority *Hess v. Lowery,* 17 Am. St.
Rep., 355; 7 L. R. A., 90 (an Indiana case), wherein it is
held, that it is recognized as a proper method of cross-exami-
nation in order to test the learning of the witness, who testi-
fied as an expert, to refer to books of approved authority upon
the subject under investigation," and cites *Insurance Co. v.
Ellis,* 89 Ill., 516; *Pinney v. Cahill,* 48 Mich., 584, and *State
v. Wood,* 53 N. H., 484, as authorities to sustain the position.
Upon examination of these authorities we find the first two
above referred to in conflict, rather than accord, and the last
one relates to a cross-examination upon matters which the
witness testified he had learned from certain medical authori-
ties, not from experience or actual observation.      The books
were put in evidence—were excluded—and the Court held
that upon the cross-examination, counsel could be allowed to
ask if the witness had not found particular theories laid down
conflicting with the theory he had advanced as the result of
his reading.      So this fails to sustain the Hess case.

In examining the case of *Rippon v. Bittel,* 30 Wis., 614,
also cited and relied upon by counsel, we find that it does not
sustain their contention.      The Court there says: "The record
does not inform us what the purpose or object of the offer of
the treatises was.      Counsel suggested that it may have been
to expose or discredit the medical witnesses, examined as ex-
perts, who, founding their opinions upon the same treatises,
recognized as standard authority, had testified that the books
laid down such and such particular propositions or theories, or
sustain such and such particular conclusions, when, in truth
and in fact, the books did not do so, and the witnesses were

mistaken.    Counsel ask if, under such circumstances, the books would not be admissible as in the nature of impeaching evidence, or to show that the experts were in error, we can not say that the admission would be improper, and so must overrule the objection."

After a careful investigation of the authorities, we find no sufficient reason to justify us in departing from the general rule so well settled upon, by what we think to be sound principle.

The third exception can not be sustained, for the reason that the hypothetical question propounded to the expert witness seems to conform strictly to the rule; and the fourth is untenable, for the reason that the conductor was not present at the time of the fall, and did not know how long it was, after the feme plaintiff was hurt, before he went into the caboose, and did not know whether plaintiffs, or either of them, heard the statement he then heard made by some one.    It is, therefore, not shown to be a part of the *res gestae,* and was properly excluded.

As to exceptions five and six, we think his Honor properly excluded the evidence as to the reputation of the brakeman, Gladden, and Conductor McGuire, as being careful and prudent.    Their reputation was not at issue, nor did the issue depend upon their reputation, nor could it be influenced by it. It was the management of the cars upon this particular occasion which was being inquired into, and not their conduct in general.

We find no error in the charge given to the jury to which specific exceptions were taken, nor to the refusal of his Honor to give the prayers rejected.

For the errors above pointed out, there will have to be a
New trial.