IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-120

No. 471A20

Filed 29 October 2021

IN THE MATTER OF: O.E.M.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order terminating respondent-father's parental rights entered on 21 August 2020 by Judge Kimberly Gasperson-Justice in District Court, Transylvania County. Heard in the Supreme Court on 30 August 2021.

> *No brief filed for petitioner-appellee Transylvania County Department of Social Services.*
>
> *Womble Bond Dickinson (US) LLP, by Rebecca C. Fleishman and Beth Tyner Jones, for appellee Guardian ad Litem.*
>
> *Richard Croutharmel for respondent-appellant father.*

Earls, Justice.

In this case, we decide whether the trial court had jurisdiction to enter an order terminating respondent-father's parental rights in his child, O.E.M. (Oscar).[1] The party seeking termination, the Transylvania County Department of Social Services (DSS), failed to verify its motion in the cause for termination as required under N.C.G.S. § 7B-1104 (2019). Nevertheless, after conducting a hearing, the trial court

---

[1] Oscar is a pseudonym which is used for ease of reading and to protect the identity of the juvenile.

terminated respondent-father's parental rights.

The precise question before us is whether DSS' failure to verify its motion deprived the trial court of subject matter jurisdiction to conduct termination proceedings. In *In re T.R.P.*, this Court held that a party's failure to verify a petition alleging that a juvenile was neglected was a fatal jurisdictional defect. 360 N.C. 588, 588 (2006). Although *In re T.R.P.* addressed a party's failure to verify a juvenile petition, we hold today that the requirement contained in subsection 7B-1104 is also jurisdictional as applied to a motion in the cause for termination. Accordingly, we conclude that DSS' failure to verify its motion in the cause deprived the trial court of subject matter jurisdiction, and we vacate the order terminating respondent-father's parental rights in Oscar.

## I.    Analysis

DSS filed a properly verified juvenile petition alleging that Oscar was a neglected and dependent juvenile on 27 November 2018. The petition alleged that Oscar's mother[2] lacked "knowledge of normal child development" and had exhibited "delusional" behavior at the hospital after giving birth, and that respondent-father lacked "essential items for the juvenile" in his residence and had a pending criminal charge for assault on a female. Both parents admitted to frequent marijuana usage.

---

[2] Oscar's mother, who was ultimately deemed incompetent and provided with an appointed guardian ad litem to represent her at the termination hearing, did not appeal the order terminating her parental rights.

The trial court entered an order granting DSS nonsecure custody of Oscar and, after a hearing, an order adjudicating Oscar to be a dependent and neglected juvenile. Both parents entered into case plans with DSS. Respondent-father complied with some elements of his case plan and did participate in occasional visits with Oscar, but he continued to use marijuana and engaged in further acts of domestic violence.

On 25 March 2020, DSS filed a motion in the cause seeking termination of both parents' parental rights on the grounds of neglect pursuant to N.C.G.S. § 7B-1111(a)(1), willful failure to make reasonable progress in correcting the conditions leading to Oscar's removal pursuant to N.C.G.S. § 7B-1111(a)(2), and incapability pursuant to N.C.G.S. § 7B-1111(a)(6). DSS failed to verify this motion.[3] On 3 June 2020, the trial court conducted a termination hearing. On 21 June 2020, the trial court entered an order concluding that DSS had proven all three grounds and terminating both parents' rights in Oscar.

On appeal, respondent-father does not challenge the findings of fact or conclusions of law contained in the termination order. Rather, the sole basis for

---

[3] We acknowledge that the motion was filed at the start of the COVID-19 pandemic and shortly after emergency orders establishing modified court procedures were entered. *See e.g.,* Order of the Chief Justice Emergency Directives 1 to 2 (13 March 2020), https://www.nccourts.gov/covid-19 (encouraging judges to grant additional accommodations to parties, witnesses, attorneys, and others with business before the courts who are at a high risk of severe illness from COVID-19."); *see also* Order of the Chief Justice Extending Court System Deadlines (19 March 2020), https://www.nccourts.gov/covid-19. However, there is nothing in the record to suggest that DSS' failure to verify its motion in the cause was in any way related to difficulties caused by the pandemic or any related accommodations, and counsel has made no argument or representation to that effect before this Court.

respondent-father's appeal is DSS' failure to verify its motion for termination. It is undisputed that DSS did not verify its motion as required under N.C.G.S. § 7B-1104. The parties disagree as to what consequences arise from this omission. Because the parties' dispute centers on their competing interpretations of our holding in *In re T.R.P.*, we begin with a brief examination of our decision in that case.

**A. In *In re T.R.P.*, this Court established that a statutory mandate to verify a juvenile petition before filing creates a jurisdictional requirement.**

¶ 6      To initiate the process for terminating a parent's parental rights in a juvenile, the party seeking termination must file a petition or may, if the child is already the subject of a pending abuse, neglect, or dependency proceeding, file a motion in the cause for termination. N.C.G.S. § 7B-1104 (2019). Subsection 7B-1104 provides that "[t]he petition [for termination], or motion pursuant to [N.C.G.S. §] 7B-1102, *shall be verified* by the petitioner or movant." *Id.* (emphasis added). The significance of the phrase "shall be verified" is the sole issue before us in this case.

¶ 7      In *In re T.R.P.*, we examined an analogous statutory provision requiring that a petition alleging a juvenile to be abused, neglected, or dependent "shall be . . . verified before an official authorized to administer oaths." 360 N.C. at 591 (quoting N.C.G.S. § 7B-403(a) (2005)). In that case, the Wilkes County Department of Social Services (WCDSS) filed a juvenile petition alleging that a juvenile was neglected, but the petition "was neither signed nor verified by the Director of WCDSS or any authorized representative thereof." *Id.* at 589. After the trial court entered an order

granting legal custody of the juvenile to WCDSS and physical custody to the juvenile's father, the respondent-mother appealed, contending that "the trial court lacked jurisdiction to enter the challenged review order because the juvenile petition was not verified as required by law." *Id.* The Court of Appeals agreed with respondent-mother and vacated the custody order for lack of subject matter jurisdiction. *In re T.R.P.*, 173 N.C. App. 541 (2005). In a 4-3 decision, this Court affirmed the decision of the Court of Appeals.

¶ 8      The majority began by describing the General Assembly's expansive authority to "within constitutional limitations, [ ] fix and circumscribe the jurisdiction of the courts of this State." *In re T.R.P.*, 360 N.C. at 590 (quoting *Bullington v. Angel*, 220 N.C. 18, 20 (1941)). According to the majority, when the legislature requires a party "follow a certain procedure" to invoke the trial court's subject matter jurisdiction, a trial court lacks authority to act if the party fails to follow that procedure. *Id.* (quoting *Eudy v. Eudy*, 288 N.C. 71, 75 (1975)). Thus, the majority recognized the general rule that "for certain causes of action created by statute, the requirement that pleadings be signed and verified 'is not a matter of form, but substance, and a defect therein is jurisdictional.'" *Id.* (quoting *Martin v. Martin*, 130 N.C. 27, 28 (1902)). The majority found ample reason to extend this general rule to causes of action created by North Carolina's juvenile code.

¶ 9      According to the majority, "verification of a juvenile petition is no mere

ministerial or procedural act." *Id.* at 591. Instead, the majority reasoned that in a proceeding which "frequently results in DSS' immediate interference with a respondent's constitutionally-protected right to parent his or her children," *id.* at 591–92, the verification requirement serves as a "vital link in the chain of proceedings carefully designed to protect children at risk on one hand while avoiding undue interference with family rights on the other," *id.* at 591. The majority emphasized "[t]he gravity of a decision to proceed and the potential consequences of filing a petition" alleging that a juvenile is abused, neglected, or dependent. *Id.* at 592. In light of

> the magnitude of the interests at stake in juvenile cases and the potentially devastating consequences of any errors, the General Assembly's requirement of a verified petition is a reasonable method of assuring that our courts exercise their power only when an identifiable government actor "vouches" for the validity of the allegations in such a freighted action.

*Id.* In addition, the majority noted that "for more than twenty years our Court of Appeals has consistently held that subject matter jurisdiction over juvenile actions is contingent upon verification of the petition," and that the General Assembly had never amended the relevant provisions of the juvenile code to modify or abrogate this holding. *Id.* at 594.

**B. The verification requirement is jurisdictional with regard to both petitions and motions in the cause filed pursuant to N.C.G.S. § 7B-1102.**

Although *In re T.R.P.* did not directly address the statute or circumstances at

issue in this case, both parties agree *In re T.R.P.* is relevant. According to respondent-father, the exact same reasons which compelled this Court to hold that the verification requirement contained in N.C.G.S. § 7B-403(a) was jurisdictional should compel us to hold that the verification requirement contained in N.C.G.S. § 7B-1104—which mirrors subsection 7B-403(a) in providing that a petition or motion "shall be verified"—is also jurisdictional. The appellee, Oscar's guardian ad litem (GAL), acknowledges that under *In re T.R.P.*, the verification requirement contained in N.C.G.S. § 7B-1102 is jurisdictional with regards to a *petition* for termination of parental rights. Nonetheless, the GAL contends that *In re T.R.P.* does not control when, as in this case, the party seeking termination initiates termination proceedings with the filing of a *motion in the cause*. In this circumstance, the GAL argues, and the dissent agrees, that the verification requirement should be treated as a merely "procedural" requirement and that DSS' failure to verify its motion does not dispossess the trial court of the jurisdiction it obtained when DSS filed a properly verified petition to have Oscar adjudicated neglected and dependent. We reject this argument for three reasons.

1. ***The statutory text of N.C.G.S. § 7B-1104 does not support drawing any distinction between petitions and motions in the cause regarding application of the verification requirement.***

¶ 11     The first problem with the GAL's argument is that it is entirely inconsistent with the text of N.C.G.S. § 7B-1104. "The goal of statutory interpretation is to

determine the meaning that the legislature intended upon the statute's enactment." *State v. Rankin*, 371 N.C. 885, 889 (2018). "When the meaning is clear from the statute's plain language, we 'give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required.'" *In re J.E.B.*, 376 N.C. 629, 2021-NCSC-2, ¶ 11 (quoting *Winkler v. N.C. State Bd. of Plumbing*, 374 N.C. 726, 730 (2020)). Because "[t]he intent of the General Assembly may be found first from the plain language of the statute," *Lenox, Inc. v. Tolson*, 353 N.C. 659, 664 (2001), we typically "begin[ ] with an examination of the plain words of the statute," *Correll v. Div. of Soc. Servs.*, 332 N.C. 141, 144 (1992).

¶ 12      In *In re T.R.P.*, we concluded that the phrase "shall be verified" supplied "unambiguous statutory language [which] mandates our holding" that the General Assembly intended the verification requirement to be jurisdictional. 360 N.C. at 594. The GAL does not ask us to overrule *In re T.R.P.*, and we see no cause to disturb a well-reasoned opinion which itself reaffirmed a longstanding legal principle. Thus, we are "bound by prior precedent[ under ] the doctrine of stare decisis." *Bacon v. Lee*, 353 N.C. 696, 712 (2001). Under *In re T.R.P.*, the phrase "shall be verified" as used in the various provisions of our juvenile code imposes a jurisdictional requirement. Therefore, the argument that the verification requirement is jurisdictional when applied to a "petition" but procedural when applied to a "motion pursuant to [N.C.G.S. §] 7B-1102" is irreconcilable with the text of N.C.G.S. § 7B-1104, unless *In re T.R.P.*

is to be overruled.

The plain words of N.C.G.S. § 7B-1104 make clear that the General Assembly did not intend for the verification requirement to operate differently for a petition for termination as compared to a motion in the cause. The qualifier "shall be verified" modifies both "[t]he petition" and "motion pursuant to [N.C.G.S. §] 7B-1102" in the same way without drawing any distinction between the two. The phrase "shall be verified" does not mean one thing when it modifies "[t]he petition" and another when it modifies "motion." The General Assembly knows how to attach distinct legal consequences to different acts or omissions described in a single statute. *See, e.g.*, N.C.G.S. § 1A-1, Rule 41 (2019) (providing for different consequences when a claim is dismissed without prejudice by stipulation, dismissed without prejudice by the court, or dismissed involuntarily upon motion of the defendant). In this case, the General Assembly chose not to make any distinction.

The dissent advances various policy arguments in support of its contention that it is inappropriate to treat the words "shall be verified" as jurisdictional in this context. Notwithstanding the substance of those arguments, the dissent makes no effort to reconcile them with the text and structure of N.C.G.S. § 7B-1104 and the binding precedent we established in *In re T.R.P.* Absent any indication that the legislature intended the phrase "shall be verified" to have one meaning in one place and an entirely different meaning in another place—and as long as *In re T.R.P.*

remains good law—we are bound to give effect to the words the legislature chose to deploy. This Court is not at liberty to treat the verification requirement as jurisdictional in one context and procedural in another. Doing so would require us to "read into a statute language that simply is not there." *N.C. Farm Bureau Mut. Ins. Co., Inc. v. Lunsford*, 2021-NCSC-83, ¶ 22 (cleaned up).

### 2. *Treating the verification requirement as jurisdictional in the context of a motion in the cause serves important constitutional interests.*

The second problem with the GAL's argument is that it ignores the concerns which underpinned our holding in *In re T.R.P.* and which are no less present when a party initiates a termination proceeding via a motion in the cause. According to the GAL, it is appropriate to treat the verification requirement as jurisdictional when a termination petition is filed because, in that circumstance, the verification requirement "assur[es] that our courts exercise their power only when an identifiable government actor 'vouches' for the validity of the allegations in such a freighted action." However, the GAL contends that treating the verification requirement as jurisdictional is redundant when a motion for termination is filed regarding a child already subject to an abuse, neglect, or dependency proceeding because in this circumstance the movant "ha[s] already vouched for the validity of the allegations underlying the TPR motion."

As we recognized in *In re T.R.P.*, the legislature's choice to require a party to verify its filing before beginning a juvenile proceeding "is a minimally burdensome

limitation on government action, designed to ensure that a [DSS] intervention that has the potential to disrupt family bonds is based upon valid and substantive allegations before the court's jurisdiction is invoked." 360 N.C. at 598. The same holds true for a termination proceeding regardless of the manner in which the proceeding begins.[4]

¶ 17      The allegations underlying a juvenile abuse, neglect, or dependency petition may overlap with, but are necessarily not the same as, the allegations underlying a motion for termination regarding the same juvenile. A trial court's decision to terminate a parent's parental rights depends upon evidence of the parent's conduct subsequent to an initial adjudication of the juvenile as abused, neglected, or dependent. *See In re Ballard,* 311 N.C. 708, 716 (1984) ("The petitioner seeking termination bears the burden of showing by clear, cogent and convincing evidence that such neglect exists *at the time of the termination proceeding.*") (emphasis added); *see also In re B.O.A.,* 372 N.C. 372, 385 (2019) ("[T]he extent to which a parent has *reasonably complied with [a] case plan provision* is, at minimum, relevant to the determination of whether that parent's parental rights in his or her child are subject

---

[4] The dissent acknowledges that *In re T.R.P.* establishes that a failure to verify "pleadings and petitions *commencing* an action and their amendments thereto" is a jurisdictional defect, but suggests that a motion in the cause does something different. Yet, in this context, a motion in the cause for termination serves the exact same function as a petition for termination: It is what a party files in order to "commenc[e]" a termination proceeding, which is separate and distinct from an underlying juvenile proceeding.

to termination for failure to make reasonable progress.") (emphasis added).

¶ 18        For example, in this case, DSS' motion to terminate respondent-father's parental rights included new allegations that he had "made minimal efforts to complete his case plan," "failed to demonstrate benefit from services directed toward remediating the issues that led to the child being placed out of [his] home," "fail[ed] . . . to make regular inquiry with regard to the minor child and aggressively work toward reunification," and failed to "show[ ] the ability to refrain from the use of controlled substances and he is unlikely to quit the use of said substances even with substance abuse treatment and medications." None of this was known at the time the original juvenile petition was verified. The trial court could not have determined that grounds existed to terminate respondent-father's parental rights without entering findings of fact addressing these allegations. It is in no way redundant to require DSS to verify a new motion containing new allegations regarding a parent's conduct which could not possibly have been included in an initial abuse, neglect, or dependency petition.

¶ 19        Further, the stakes for a parent are considerably higher in a termination proceeding than in an abuse, neglect, or dependency proceeding. Although the latter carries with it "the potential to disrupt family bonds," *In re T.R.P.*, 360 N.C. at 598, the former may result in the permanent severance of the parent-child relationship and the extinguishment of an individual's constitutional status as a parent. Of course,

the "paramount importance of the child's best interest and the need to place children in safe, permanent homes within a reasonable time" weigh heavily throughout every phase of a juvenile proceeding. *Id.* at 601 (quoting *In re R.T.W.*, 359 N.C. 539, 549–50 (2005)). Yet our juvenile code also incorporates the protections afforded to all parents under the Due Process Clause of the Fourteenth Amendment. *See, e.g.*, *In re E.B.*, 375 N.C. 310, 316 (2020).[5] The General Assembly chose to mandate that DSS verify the allegations underpinning an action seeking to interfere with the parent-child relationship. This choice helps ensure that the State appropriately balances its interest in expeditiously achieving permanency for at-risk juveniles with its interest in not improperly abrogating North Carolinians' constitutionally guaranteed parental rights and not subjecting juveniles to the disruption occasioned by a termination proceeding except when necessary. These concerns are present regardless of whether DSS has filed a petition for termination or a motion in the cause.

### 3. A trial court's jurisdiction to conduct an abuse, neglect, or dependency proceeding does not automatically extend to a termination proceeding.

¶ 20    Finally, we reject the GAL's argument that DSS' filing of a properly verified

---

[5] N.C.G.S. § 7B-1100(2) provides that one purpose of Article 11 is "to protect all juveniles from *the unnecessary severance of a relationship with biological or legal parents*." (Emphasis added.) The General Assembly did not intend for—and the constitution does not allow—courts to disregard the procedural protections afforded to biological and legal parents, which protect both the parents' constitutional parental rights and juveniles from "unnecessary severance" of the parent-child relationship.

petition alleging Oscar was neglected and dependent vests the trial court with jurisdiction to terminate respondent-father's parental rights. According to the GAL, we need not treat the verification requirement as jurisdictional when DSS files a motion for termination after previously filing a properly verified juvenile petition, because the trial court need not "re-establish" the jurisdiction it possessed over the underlying juvenile proceedings. This argument is inconsistent with our precedents and with the jurisdictional provisions of the juvenile code.

¶ 21   A petitioner or movant must satisfy distinct requirements to vest a trial court with jurisdiction to conduct a juvenile proceeding on the one hand and a termination proceeding on the other. *Compare* N.C.G.S. § 7B-200(b) (listing certain jurisdictional requirements for abuse, neglect, and dependency proceedings) *with* N.C.G.S. § 7B-1101 (listing certain jurisdictional requirements for termination proceedings).[6] A trial court's authority to adjudicate a child abused, neglected, or dependent does not confer upon the court the authority to terminate that child's parents' parental rights. *See In re A.L.L.*, 376 N.C. 99, 105 (2020) ("[A] trial court lacks jurisdiction over a termination petition if the requirements of N.C.G.S. § 7B-1101 have not been met,

---

[6] In addition, there is a difference between the requirements for establishing the jurisdiction of a court to act as a general matter and the requirements for establishing that a court may exercise its jurisdiction in a particular case. Thus, as *In re T.R.P.* recognized, even if a trial court is generally a proper forum for adjudicating the status of a child because the requirements of N.C.G.S. § 7B-200(b) or N.C.G.S. § 7B-1101 have been met, a particular court may lack jurisdiction over a particular child because other jurisdictional prerequisites have not yet been satisfied.

even if there is an underlying abuse, neglect, or dependency action concerning that juvenile in the district in which the termination petition has been filed."). If a petitioner or movant fails to meet all of the requirements for establishing the court's jurisdiction over a termination proceeding, then the court lacks jurisdiction to conduct a termination proceeding, regardless of whether the trial court previously exercised jurisdiction over the child for other purposes.

¶ 22   The GAL's reliance on a recent decision from this Court in support of its argument on this issue is misplaced. In its brief, the GAL points to language from our decision in *In re K.S.D-F.*, where we stated that "[j]urisdiction arises upon the filing of 'a properly verified juvenile petition' and extends 'through all subsequent stages of the action.' " 375 N.C. 626, 633 (2020) (quoting *In re T.R.P.*, 360 N.C. at 593). The GAL contends that *In re K.S.D-F.* means that once a trial court obtains jurisdiction over a juvenile through the filing of a properly verified juvenile petition, the trial court's jurisdiction continues up through and including a termination proceeding. However, the GAL's interpretation of this language misconstrues both *In re K.S.D-F.* and the provisions of the juvenile code we addressed in that case.

¶ 23   In *In re K.S.D-F.*, the respondent-mother asserted that the trial court lacked jurisdiction to terminate her parental rights because DSS did not lawfully have custody of the children at the time it filed its motion for termination. *Id.* at 632. If the respondent-mother's assertion was correct, DSS would have lacked standing to file a

termination motion under N.C.G.S. § 7B-1103(a)(3) (2019), and the trial court would have lacked jurisdiction to conduct termination proceedings. *Id.* According to the respondent-mother, when the trial court had, in an earlier proceeding, "determined that a permanent plan for custody and guardianship with [foster parents] was in the children's best interests and awarded custody and guardianship to the [foster parents]," the trial court's jurisdiction over the children ceased. *Id.* at 633. Thus, the respondent-mother claimed that the trial court lacked the legal authority to enter a subsequent order placing the children back in DSS custody and by extension that DSS lacked standing to file a termination motion.

We rejected the respondent-mother's argument, noting that when the trial court entered an order placing the children with foster parents, "[t]he trial court specifically retained jurisdiction and provided that further hearings could be brought upon a motion by any party." *Id.* Therefore, when DSS subsequently filed a motion to reopen proceedings, the trial court did possess the authority to place the children in DSS custody. *Id.* at 633–34. Because the trial court did have jurisdiction to enter the nonsecure custody order, DSS legally had custody of the juveniles, such that DSS "had standing to file the motion to terminate respondents' parental rights" which vested "the trial court [with] jurisdiction over the termination action." *Id.* at 635.

Nothing in *In re K.S.D-F.* suggested that the trial court's jurisdiction over an underlying abuse, neglect, or dependency proceeding was sufficient, standing alone,

to establish the court's jurisdiction over a subsequent termination proceeding. Indeed, our reasoning in *In re K.S.D-F.* is predicated on the assumption that jurisdiction does not continue from the underlying juvenile proceeding to a subsequent termination proceeding. If the GAL's theory is correct, there would have been no reason for this Court to reach the question of whether DSS had standing to file a motion to terminate the respondent-mother's parental rights in *In re K.S.D-F.* because the trial court indisputably had jurisdiction to conduct the underlying juvenile proceedings after DSS filed a properly verified petition alleging the juvenile was neglected. We would have had no reason to decide whether there existed an independent basis for the trial court's authority to enter an order terminating the respondent-mother's parental rights.

¶ 26     There is nothing anomalous about requiring a party to establish that the trial court possessed jurisdiction to conduct a termination proceeding even when the court previously had jurisdiction to conduct a juvenile proceeding—it is simply what our juvenile code requires. *See, e.g.*, *In re J.M.*, 797 S.E.2d 305, 307 (N.C. Ct. App. 2016) (holding that the Durham County District Court "lacked jurisdiction to hear the termination of parental rights petition" even though the court previously exercised jurisdiction in an underlying juvenile proceeding, because "none of the[ independent jurisdictional] requirements were met"). Accordingly, we reject the GAL's argument that the trial court in this case possessed subject matter jurisdiction to terminate

respondent-father's parental rights in Oscar notwithstanding DSS' failure to verify its motion for termination.

## II.   Conclusion

In all significant respects, this case is indistinguishable from our decision in *In re T.R.P.* As in *In re T.R.P.*, the party which sought a judicial order addressing the status of a juvenile failed to comply with a requirement that the filing be verified contained in a provision of North Carolina's juvenile code. As in *In re T.R.P.*, the trial court entered an order notwithstanding this deficiency. The only salient difference is that in this case, DSS filed a motion rather than a petition. However, this difference is not legally significant. Subsection 7B-1104 draws no distinction between the verification requirement as it applies to petitions and motions in the cause filed pursuant to N.C.G.S. § 7B-1102. The interests the verification requirement serve do not vary with the manner in which a termination proceeding is initiated. A trial court's jurisdiction to conduct an underlying abuse, neglect, or dependency proceeding does not automatically provide the court with jurisdiction to conduct a termination proceeding.

Accordingly, the verification requirement contained in N.C.G.S. § 7B-1104 is jurisdictional as applied to both a petition for termination and a motion for termination. Because DSS failed to verify its motion for termination of respondent's parental rights, "the trial court ha[d] no power to act." *In re T.R.P.*, 360 N.C. at 598.

Therefore, we vacate the trial court order terminating respondent's parental rights in Oscar and remand for further proceedings not inconsistent with this opinion.

VACATED.

Justice BARRINGER, dissenting.

Ending a parent-child relationship is a decision the court must weigh carefully, mindful of constitutional protections and statutory safeguards. Those safeguards, however, are to be applied practically so that the best interests of the child—the polar star in controversies over child neglect and custody—are the paramount concern.

*In re L.M.T.*, 367 N.C. 165, 173 (2013); *see also In re Montgomery*, 311 N.C. 101, 109 (1984).

Here, not only does the majority's result disregard this paramount concern, but the majority does so by ignoring the legislature's stated policy goals with respect to termination of parental rights, the plain language of the relevant statutes, and the statutory scheme of the Juvenile Code. Accordingly, I respectfully dissent.

In this matter, the Transylvania County Department of Social Services (DSS) filed a verified juvenile petition alleging the neglect and dependency of Oscar on 27 November 2017. Subsequently, the trial court adjudicated Oscar a neglected and dependent juvenile. Then, in the same cause, DSS filed a motion for termination of parental rights on 25 March 2020 pursuant to N.C.G.S. § 7B-1102(a). However, the motion was not verified. After a hearing on the termination-of-parental-rights motion, the trial court terminated respondent's parental rights by order entered on 21 August 2020.

¶ 32        No one complained of the lack of verification at any time before the trial court. Respondent's sole basis for his appeal of the termination-of-parental-rights order is that "[t]he trial court lacked subject matter jurisdiction to terminate [respondent's] parental rights because [DSS] failed to verify its termination[-]of[-]parental[-]rights motion in the cause as required by N.C.[G.S.] § 7B-1104."

¶ 33        The legislature has expressly "declare[d] as a matter of legislative policy with respect to termination of parental rights" four purposes of Article 11 of the Juvenile Code in N.C.G.S. § 7B-1100. N.C.G.S. § 7B-1100 (2019). As relevant to this matter, the legislature established that the "general purpose of [Article 11] is to provide judicial procedures for terminating the legal relationship between a juvenile and the juvenile's biological or legal parents when the parents have demonstrated that they will not provide the degree of care which promotes the healthy and orderly physical and emotional well-being of the juvenile," N.C.G.S. § 7B-1100(1), and "the further purpose of [Article 11 is] to recognize the necessity for any juvenile to have a permanent plan of care at the earliest possible age, while at the same time recognizing the need to protect all juveniles from the unnecessary severance of a relationship with biological or legal parents," N.C.G.S. § 7B-1100(2).

¶ 34        Therefore, the clear statutory language instructs us to interpret the statutes as setting forth judicial procedures—not subject matter jurisdictional requirements. To comply with this statutory mandate, we must construe statutes in Article 11 to

set forth judicial procedures unless the plain language of the statute indicates it is a jurisdictional requirement.

¶ 35     Additionally, in almost all situations, making a judicial procedure a requirement for the trial court's subject matter jurisdiction directly contradicts the text of Article 11: that juveniles should receive a permanent plan of care at the earliest possible age. *See* N.C.G.S. § 7B-1100(2). Challenges to jurisdiction, unlike judicial procedures, can be raised for the first time on appeal and, if successful, render the underlying proceeding void ab initio. *In re T.R.P.*, 360 N.C. 588, 590, 595 (2006).

¶ 36     In matters arising under the Juvenile Code, the legislature by enacting statutes has established the trial court's subject matter jurisdiction. *In re K.J.L.*, 363 N.C. 343, 345 (2009). It is the legislature—not the courts—that "can, within the bounds of the Constitution, set whatever limits it wishes on the possession or exercise of that jurisdiction." *In re J.M.*, 377 N.C. 298, 2021-NCSC-48, ¶ 15 (quoting *In re M.I.W.*, 365 N.C. 374, 377 (2012)). As enacted by the legislature, the trial court "has exclusive, original jurisdiction over any case involving a juvenile who is alleged to be abused, neglected, or dependent," N.C.G.S. § 7B-200(a) (2019), and once obtained, "jurisdiction shall continue until terminated by order of the [trial] court or until the juvenile reaches the age of [eighteen] years or is otherwise emancipated, whichever occurs first," N.C.G.S. § 7B-201(a) (2019). Thus, "[w]hen the district court is exercising jurisdiction over a juvenile and the juvenile's parent in an abuse, neglect,

or dependency proceeding, a person or agency specified in [N.C.]G.S. [§] 7B-1103(a) may file in that proceeding a motion for termination of the parent's rights in relation to the juvenile." N.C.G.S. § 7B-1102(a) (2019).

¶ 37   As recognized by this Court in *In re T.R.P.,* "the provisions in Chapter 7B establish one continuous juvenile case with several interrelated stages, not a series of discrete proceedings." 360 N.C. at 593. Therefore, as it relates to verification, "[a] trial court's subject matter jurisdiction over all stages of a juvenile case is established when the action is initiated with the filing of a properly verified *petition.*" *Id.* (emphasis added); *see also In re K.S.D.-F.,* 375 N.C. 626, 633 (2020) ("Jurisdiction arises upon the filing of a properly verified juvenile petition and extends through all subsequent stages of the action." (cleaned up)).

¶ 38   Further, the legislature has limited the trial court's jurisdiction as to termination of parental rights by enacting N.C.G.S. § 7B-1101, which states as follows:

> § 7B-1101 Jurisdiction
>
> The court shall have exclusive original jurisdiction to hear and determine any petition or motion relating to termination of parental rights to any juvenile who resides in, is found in, or is in the legal or actual custody of a county department of social services or licensed child-placing agency in the district at the time of filing of the petition or motion. The court shall have jurisdiction to terminate the parental rights of any parent irrespective of the age of the parent. Provided, that before exercising jurisdiction under this Article, the court shall find that it has jurisdiction to

> make a child-custody determination under the provisions of G.S. 50A-201, 50A-203, or 50A-204. The court shall have jurisdiction to terminate the parental rights of any parent irrespective of the state of residence of the parent. Provided, that before exercising jurisdiction under this Article regarding the parental rights of a nonresident parent, the court shall find that it has jurisdiction to make a child-custody determination under the provisions of G.S. 50A-201 or G.S. 50A-203, without regard to G.S. 50A-204 and that process was served on the nonresident parent pursuant to G.S. 7B-1106. Provided, further, that the clerk of superior court shall have jurisdiction for adoptions under Chapter 48 of the General Statutes.

N.C.G.S. § 7B-1101 (2019); *see also In re A.L.L.*, 376 N.C. 99, 105 (2020) ("[A] trial court lacks jurisdiction over a termination petition if the requirements of N.C.G.S. § 7B-1101 have not been met, even if there is an underlying abuse, neglect, or dependency action concerning that juvenile in the district in which the termination petition has been filed.").

¶ 39    Thus, the Juvenile Code, its articles, and statutes, as previously recognized by this Court, all establish that jurisdiction in this matter is vested with the trial court upon the filing of the juvenile *petition* and continues uninterrupted until the juvenile's majority, emancipation, or a trial court's order even for termination of parental rights if the legislature's enactment regarding jurisdiction, N.C.G.S. § 7B-1100, is satisfied.

¶ 40    Here, DSS failed to verify a motion for termination of parental rights that it filed in a pending juvenile abuse, neglect, and dependency proceeding. But DSS had

already verified the juvenile petition underlying the action, and there is no contention that the trial court lacked jurisdiction under N.C.G.S. § 7B-1101. While this Court has held that the verification requirement for a juvenile *petition* alleging abuse, neglect, or dependency pursuant to N.C.G.S § 7B-403(a) was jurisdictional in *In re T.R.P.*, 360 N.C. at 588, this appeal involves an unverified *motion* filed pursuant to N.C.G.S. § 7B-1102(a) in the abuse, neglect, or dependency cause. Thus, to the extent, our prior caselaw has held that pleadings and petitions commencing an action and their amendments thereto are jurisdictional defects "for certain causes of action created by statute," *id.* (citing *Martin v. Martin*, 130 N.C. 19, 20 (1902)[1] (discussing an unverified amendment to a complaint in a divorce action)), they do not resolve the issue before this Court now.

¶ 41    Further, nothing about the statutory language or statutory scheme supports the view that verification of a motion for termination of parental rights in a pending juvenile case is required for the trial court's subject matter jurisdiction. "In construing statutory language, 'it is our duty to give effect to the words actually used in a statute and not to delete words used or to insert words not used.' " *In re B.O.A.*, 372 N.C. 372, 380 (2019) (quoting *Lunsford v. Mills*, 367 N.C. 618, 623 (2014)). Here, N.C.G.S. § 7B-1104 is entitled "Petition or motion" and makes no reference to

---

[1] Notably, as the dissent in *In re T.R.P.* observed, *Martin* was addressed by this Court prior to the adoption of notice pleading. *In re T.R.P.*, 360 N.C. 588, 606 (2006) (Newby, J., dissenting).

jurisdiction. N.C.G.S. § 7B-1104 (2019). Section 7B-1101, previously quoted herein and entitled "Jurisdiction," which addresses jurisdiction for termination-of-parental-rights motions, also contains no cross-reference to N.C.G.S. § 7B-1104 or reference to a verification requirement. N.C.G.S. § 7B-1101. This Court has previously recognized that in these circumstances—when the legislature neither mentions jurisdiction in the statute at issue nor references it in the statute entitled "jurisdiction"—the legislature did not intend such statute's requirements "to function as prerequisites for [trial] court jurisdiction." *In re D.S.*, 364 N.C. 184, 193–94 (2010).[2]

¶ 42        Finally, deeming verification of a motion in the cause a jurisdictional requirement in an abuse, neglect, or dependency proceeding cannot be justified. This Court addressed in *In re T.R.P.* the verification requirement for initiating "[a] juvenile abuse, neglect, or dependency action under Chapter 7B [that] may be based on an anonymous report." 360 N.C. at 591. Unlike a juvenile petition, the filing of a termination-of-parental-rights motion in a juvenile abuse, neglect, or dependency

---

[2] While the majority acknowledges that *In re T.R.P.* did not address the statute and issue before this Court in this matter, it nevertheless relies solely on that opinion, deeming itself bound, while ignoring this Court's other precedent like *In re D.S.* and other precedent on statutory construction. Such precedent cannot be reconciled with a reading that this Court's construction in *In re T.R.P.* of N.C.G.S. § 7B-403(a) (2005) ("[T]he petition shall be drawn by the [DSS] director, verified before an official authorized to administer oaths, and filed by the clerk, recording the date of filing.") mandates that anytime something "shall be verified," it is a jurisdictional requirement. *In re T.R.P.*, 360 N.C. at 591. In fact, *In re T.R.P.* acknowledges the contrary: "[F]or *certain* causes of action created by statute, the requirement that pleadings be signed and verified is not a matter of form, but substance, and a defect therein is jurisdictional." *Id.* (cleaned up) (emphasis added).

proceeding is frequently based on the underlying verified juvenile abuse, neglect, or dependency petition and subsequent conduct and course of dealings between the parents, DSS, the juvenile, and the guardian ad litem, much of which the trial court is privy to from hearings. Section 7B-906.1(a) states as follows:

> The [trial] court shall conduct a review hearing within 90 days from the date of the initial dispositional hearing held pursuant to [N.C.]G.S. [§] 7B-901. Review hearings shall be held at least every six months thereafter. Within [twelve] months of the date of the initial order removing custody, there shall be a review hearing designated as a permanency planning hearing. Review hearings after the initial permanency planning hearing shall be designated as permanency planning hearings. Permanency planning hearings shall be held at least every six months thereafter or earlier as set by the court to review the progress made in finalizing the permanent plan for the juvenile, or if necessary, to make a new permanent plan for the juvenile.

N.C.G.S. § 7B-906.1(a) (2019)

¶ 43    Further, there is no change in the status, physically or legally, between the parent and the juvenile upon the filing of a motion in the cause to terminate parental rights. In other words, it does not "result[ ] in DSS'[s] immediate interference with a respondent's constitutionally-protected right to parent his or her children." *In re T.R.P.*, 360 N.C. at 591–92. Instead, the relationship between the parent and the juvenile does not change until an adjudicatory hearing—where the movant has the burden of proof; the rules of evidence for civil actions apply; and the trial court must take evidence, find facts based on clear, cogent, and convincing evidence, adjudicate

the existence of grounds for termination pursuant to N.C.G.S. § 7B-1111, and reduce to writing its findings and conclusions—and a dispositional hearing to determine "whether terminating the parent's rights is in the juvenile's best interest." N.C.G.S. § 7B-1110(a) (2019); *see* N.C.G.S. §§ 7B-1109 to -1110. Thus, while the gravity of filing a termination-of-parental-rights motion is undeniable, there are no identifiable material consequences to the parent or the juvenile from the lack of verification of a motion for termination of parental rights in an abuse, neglect, or dependency proceeding over which the trial court is exercising jurisdiction over both a juvenile and the juvenile's parent pursuant to a verified petition. Thus, unlike this Court in *In re T.R.P.,* the majority reads into a legislative enactment, devoid of reference to jurisdiction, an intent to make a jurisdictional requirement without substantiating reasons. *See In re T.R.P.*, 360 N.C. at 591.

In conclusion, the verification requirement set forth in N.C.G.S. § 7B-1104 for a motion for termination of parental rights filed in an abuse, neglect, or dependency proceeding where the trial court has subject matter jurisdiction pursuant to a verified abuse, neglect, or dependency juvenile petition cannot and should not be deemed jurisdictional by this Court. Instead, it is a procedural requirement.

Chief Justice NEWBY and Justice BERGER join in this dissenting opinion.